Kaufman Dolowich & Voluck, LLP
21 South Main Street, Suite 251
Hackensack, New Jersey 07102
(201) 708-8240
*Attorneys for Defendant, National Auto Protection Corporation*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WORCESTER DIVISION

| | |
|---|---|
| JOHN HEATON and CHRISTOPHER HORIGAN on behalf of themselves and others similarly situated,<br><br>        Plaintiffs,<br>-against-<br><br>MOTOR VEHICLE ASSURANCE, NATIONAL AUTO PROTECTION CORP, and SUNPATH, LTD.,<br><br>        Defendants. | Case No. 4:17-cv-40169-TSH<br><br>**MEMORANDUM OF LAW** |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
NATIONAL AUTO PROTECTION CORPORATION'S
MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(b)(1)**

---

Gino A. Zonghetti
*Of Counsel:*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.....................................................................................ii

INTRODUCTION....................................................................................................1

STATEMENT OF PROCEDURAL BACKGROUND AND FACTS...............................1

LEGAL ARGUMENT.............................................................................................5

**POINT I**

PLAINTIFF CHRISTOPHER HORIGAN CANNOT ESTABLISH ARTICLE III
STANDING...........................................................................................................5

    A.    Standard for Dismissal Pursuant to Fed. R. Civ. P.
12(b)(1)...................................................................................5

    B.    Standing Interwoven with the Telephone Consumer Protection Act...........9

    C.    Plaintiff Christopher Horigan Lacks Standing to Sue NAPC Because He
Consented to the Telephone Calls He Received. Accordingly, the Claims
Against NAPC Must Be Dismissed...................................................9

**POINT II**

IN ADDITION TO DISMISSING HORIGAN'S INDIVIDUAL CLAIMS, THE PUTATIVE
CLASS ACTION AS AGAINST NAPC MUST BE ALSO BE DISMISSED.....................16

**POINT III**

THE CLAIMS BROUGHT PURSUANT TO M.G.L. 93A MUST BE DISMISSED.............16

CONCLUSION.......................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 295 (D. Mass. August 9, 2016)......................13-14

*Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 576 (2013).......................................13

*Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996)..........................................8

*Barrera v. Guaranteed Rate, Inc.*, No. 17-cv-5668, 2017 U.S. Dist. LEXIS 175223,
at *5 (N.D. Ill. Oct. 23, 2017)........................................................................12

*Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986)...............................6

*Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 397, 2015 U.S. Dist. LEXIS 46899,
*71 (E.D.N.Y. April 8, 2015)........................................................................13

*Brown v. Am. Honda (In re New Motor Vehicles Canadian Exp. Antitrust Litig.)*,
522 F.3d 6, 13 (1st Cir. 2008)........................................................................16

*Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. 1981)....................................................8

*Carroll v. U.S.*, 661 F.3d 87, 94 (1st Cir. 2011)........................................................8

*Cellco P'ship v. Wilcrest Health Care Mgmt.*, 2012 U.S. Dist. LEXIS 64407,
at *23-25 (D.N.J. May 8, 2012).....................................................................15

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)......................................................6

*Comfort v. Lynn Sch. Comm.*, 150 F. Supp. 2d 285, 293-94 (D. Mass. 2001)...................6-7,9

*Compagnie Mar. Marfret v. San Juan Bay Pilots Corp.*,
532 F. Supp. 2d 369, 372-73 (D.P.R. 2008)........................................................7

*Cullinane v. Uber Techs., Inc.*, 2016 U.S. Dist. LEXIS 89540,
*7 (D. Mass. July 11, 2016)........................................................................13

*D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 491 (D.N.J. 2008)........................7

*Fábrica de Muebles J.J. Álvarez, Incorporado v. Inversiones Mendoza, Inc.*,
682 F.3d 26, 32 (1st Cir. 2012)......................................................................7

*Fennick v. Allesandro,* No. 16-10957-PBS,
2016 U.S. Dist. LEXIS 76589, 2016 WL 3255014, at *4 (D. Mass. June 13, 2016)..............17

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 180-81 (2000)..................6

*FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231 (1990)...................................................6

*Gordon v. National Youth Work Alliance,* 218 U.S. App. D.C. 337, 675 F.2d 356, 362-63 (D.C. Cir. 1982; *Land v. Dollar,* 330 U.S. 731, 735 (1947)...................................................8

*Hayes v. Wal-Mart Stores, Inc.,* 725 F.3d 349, 354 (3d Cir. 2013)................................16

*In re Bank of Boston Corp. Securities Litigation,* 762 F. Supp. 1525, 1531 (D. Mass. 1991)......8

*Jenkins v. McKeithen,* 395 U.S. 411, 421-422, (1969).............................................7

*Johansen v. U.S.,* 506 F.3d 65, 68 (1st Cir. 2007)...............................................7-8

*Jones v. FMA Alliance Ltd.,* 978 F. Supp. 2d 84, 86 (D. Mass. October 17, 2013).................9

*Jones v. NCO Fin. Servs.,* Civil Action No. 13-12101-DJC, 2014 U.S. Dist. LEXIS 161169, at *4-5 (D. Mass. Nov. 14, 2014)...................................................................9

*Leyse v. Bank of Am. Nat'l Ass'n,* 804 F.3d 316, 323 (3d Cir. 2015)...............................15

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)........................................6

*Mack v. Suffolk County,* 191 F.R.D. 16 at *19 (D. Mass. 2000)....................................8

*Merlonghi v. United States,* 620 F.3d 50, 54 (1st Cir. 2010).......................................8

*Mikhak v. Univ. of Phoenix,* 2016 U.S. Dist. LEXIS 80705, *18 (N.D. Cal. June 21, 2016)......14

*Murphy v. United States,* 45 F.3d 520, 522 (1st Cir. 1995)........................................8

*Okereke v. Uber Techs., Inc.,* 2017 U.S. Dist. LEXIS 213807, *14 (D. Mass. June 13, 2017)...................................................................13-14

*Parham v. Massachusetts,* No. 16-cv-11468-PBS, 2017 U.S. Dist. LEXIS 213808, at *10-11 (D. Mass. Aug. 21, 2017)...............................17

*Rivera Torres v. Junta de Retiro para Maestros,* 502 F.Supp.2d 242, 247 n.3 (D.P.R. 2007).............................................................7

iii

*Schumacher v. Credit Prot. Ass'n*, 2015 U.S. Dist. LEXIS 132752,
\*1, 2015 WL 5786139 (S.D. Ind. Sep. 30, 2015)............................................................15

*Sgouros v. TransUnion Corp.*, No. 14 C 1850, 2015 U.S. Dist. LEXIS 13691, 2015 WL 507584,
at \*4 (N.D. Ill. Feb. 5, 2015)............................................................14

*Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016)............................................................6

*Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 802 (W.D. Pa. 2016)....................15

*Sullivan v. All Web Leads, Inc.*, No. 17 C 1307, 2017 U.S. Dist. LEXIS 84232,
at \*5-7 (N.D. Ill. June 1, 2017)............................................................11-12

*Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)............................................................7

*Van Patten v. Vertical Fitness Grp., Ltd. Liab. Co.*, 847 F.3d 1037, 1044 (9th Cir. 2017)........11

*Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998)............................................................7

*Warth v. Seldin*, 422 U.S. 490, 501-502 (1975)............................................................8

*Washington Legal Foundation v. Massachusetts Bar Foundation*,
993 F.2d 962, 971 (1st Cir. 1993)............................................................8

*Winner. v. Kohl's Dep't Stores, Inc.*, No. 16-1541, 2017 U.S. Dist. LEXIS 131225,
at \*17-18 (E.D. Pa. Aug. 17, 2017)............................................................6,9,15

*W. Union Co. v. Tom Kula & Paymentus Grp., Inc.*, 2017 U.S. Dist. LEXIS 107594,
\*12-13 (N.D. Ill. Jul. 12, 2017)............................................................14

*Zauderer v. Cirrus Consulting Group (USA), Inc.*,
265 F. Supp. 3d 104, 107 (D. Mass. 2017)............................................................6-8


**Statutes & References**

47 U.S.C. § 227............................................................1,9

28 U.S.C. §§ 1331 – 1332............................................................17

47 C.F.R. § 64.1200............................................................11-12

*Federal Jurisdiction* §§ 2.1, 2.3 (1994)............................................................6

*Federal Practice & Procedure, Civil* 2d, § 3531.15, at 95 n. 9 (2d ed. 1984)............................................................6

iv

**Court Rules**

Fed. R. Civ. P. 23.................................................................................................1

Fed. R. Civ. P. 12(b)(1)..............................................................................5-7, 17

## INTRODUCTION:

Defendant National Auto Protection Corporation (hereinafter, "NAPC") moves to dismiss the complaint filed against it in this action purporting to plead a claim pursuant to the Telephone Consumer Protection Act (hereinafter, "TCPA"), 47 U.S.C. § 227, and Massachusetts General Law 93A as a result of a telephone call allegedly made by NAPC to plaintiff Christopher Horigan (hereinafter, "Horigan") on July 7, 2017.[1] Plaintiff Anthony Heaton (hereinafter, "Heaton") makes no allegations against NAPC, although the complaint seeks to prosecute a class action pursuant to Fed. R. Civ. P. 23. Horigan, however, lacks standing to bring suit under the TCPA.

Indeed, Horigan consented to the telephone call made by NAPC, and, accordingly, he did not suffer any damages as envisioned by the TCPA. Further, Horigan's conduct in the manner in which he provided consent – by using a false name – and while on the telephone calls with NAPC's employees, during which he acknowledged having provided consent, and expressed interest in the services offered by NAPC, while stating otherwise when out of the ear shot of the NAPC employee, and, providing yet another false name, reveal that Horigan acted in a manner akin to a professional plaintiff who, although providing consent, all the while was attempting to concoct a claim. Respectfully, the claims contained in the lawsuit against NAPC must be dismissed.

## STATEMENT OF PROCEDURAL BACKGROUND AND FACTS:

### The Complaint:

Plaintiffs Heaton and Horigan filed the complaint in this action on the basis of federal question jurisdiction on December 18, 2017 on behalf of themselves and a putative class,

---

[1] Although the complaint pleads that Horigan received a single telephone call from NAPC, in fact, NAPC called him on two occasions, after having received written consent from Horigan to telephone him.

asserting claims under the TCPA. *See the Declaration of Gino A. Zonghetti, Exhibit 1.* The complaint pleaded no claims on behalf of Heaton against NAPC. The complaint alleges that defendant Sunpath Ltd. hired NAPC to originate new customers and that NAPC initiated a pre-recorded telemarketing call to a cellular telephone number of Horigan, as well as other putative class members for the purposes of advertising Sunpath's services, using an automated dialing system, which is prohibited by the TCPA. *Zonghetti Dec., Exhibit 1,* ¶ 2.

With respect to Horigan, the complaint pleaded as follows in pertinent part:

"Calls to Mr. Horigan

\* \* \*

38.     National Auto Protection Corp placed a pre-recorded telemarketing call to him on July 7, 2017.
39.     When the call was answered, there was a lengthy pause and a click followed by silence before a pre-recorded message came on the line, which indicated to the Plaintiff that the call was made using an ATDS.
40.     In fact, the use of a pre-recorded message itself is indication that the calls were made with an ATDS, as it would not make any logical sense to hand-dial a call only to play a pre-recorded message.
41.     To identify the calling party, the Plaintiff pressed 1.
42.     When the Plaintiff finally connected with a live individual, he was solicited for an extended warranty purchase for Sunpath services.
43.     When the Plaintiff initially attempted to identify the company that was calling him, he was told the company was www.sunpath.com.
44.     That website belongs to the co-defendant Sunpath." *Zonghetti Dec., Exhibit 1.*

The complaint further alleges, incorrectly, that "[p]laintiffs never consented to receive the calls …" *Zonghetti Dec., Exhibit 1,* ¶ 4.

The putative class for which plaintiffs seek certification was pleaded in the complaint as:

"TCPA CLASS
All persons within the United States: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using an automatic telephone

2

dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial." *Zonghetti Dec., Exhibit 1, ¶ 69.*

* * *

**The Facts:**

NAPC is a Florida corporation in the business of providing marketing services for Sunpath, Ltd. *Declaration of William Thomas Finneran, ¶¶ 1–2.* NAPC utilizes leads that are generated in a manner in full compliance with the TCPA from sources with whom NAPC contracts that provide marketing-like banner advertisements and informational landing pages on websites. *Ibid., ¶ 3.* Interested consumers can provide their vehicle information and contact telephone number, and are only contacted by NAPC if they provide written consent. *Ibid., ¶ 3.* Consent is provided by checking a box on the website which states that the consumer agrees to specific terms set forth on the website. *Ibid., ¶ 6, Exhibit C.* Among those terms is one that provides that the consumer has consented to, among other things, automated telephone dialing system calls to their wireless telephones. *Ibid., ¶ 3.* Horigan provided his consent in this case, although through atypical means. *Ibid., ¶¶ 4-6.*

On April 27, 2017, Horigan, using the name "Colleen Korniotes," consented to receive telephone calls from automated telephone dialing systems at a telephone number that he provided, including on a wireless telephone, while visiting a web-site entitled "wehaveautoloans.com." *Ibid., ¶ 4, Exhibit A; ¶ 5, Exhibit B.* Horigan accepted the terms provided on the website, which are in pertinent part re-printed below, and provided his cellular telephone number as the number through which he consented to be contacted: (508) XXX-4142. *Ibid., ¶ 4, Exhibit A.*

3

The boxes that effectuate consent appear as follows:

☐ By checking this box I agree to the following:
I authorize the use of this information to obtain such additional information as may be required, including credit reports. I further authorize this application and the supplied financial information to be forwarded to one or more third party lenders and/or participating auto dealers including 1800CARSHOW, Detroit Trading and DriveTime and other third parties that may be able to offer me or assist me in finding financing that meets my needs. I understand this credit evaluation is necessary to proceed with the processing of my loan request.

☐ By checking this box I agree to the following:
In accordance with the Telephone Consumer Protection Act (TCPA) of 1991 as amended effective Oct 16, 2013, by checking the box above, I agree to be contacted by your marketing partners and/or participating auto dealers including 1800CARSHOW, Detroit Trading, DriveTime, Sunrise Media Partners and other third parties about services via email and/or the phone number provided above, including my wireless number if provided. Contact methods may include emails, phone calls generated from an automated telephone dialing system or text messaging. By checking the box, I intend to sign this consent, I certify the information is correct and have read and understand the privacy policy. I understand that this consent is not required as a condition of purchasing any goods or services. See our Privacy Policy for complete information about your privacy.
*Ibid.*, ¶ 6, *Exhibit C.*

On July 7, 2017, NAPC called Horigan on the wireless telephone number he provided while on the "wehaveautoloans.com" website. *Ibid.*, ¶ 7. Horigan provided his consent to receive this call. *Ibid.* A true and accurate transcript of the recording of that telephone call between NAPC's employee and Horigan is attached to the Finneran Declaration as *Exhibit D*, and a DVD of the recording has been separately provided to both the Court and Horigan's counsel. *Ibid.*, ¶ 7. While on the call, Horigan provided a different name, Christopher Miller. *Ibid.*, ¶ 7, *Exhibit D*, lines 20–22. NAPC provided Mr. Horigan information about available extended vehicle service contracts, including coverage and pricing information. *Ibid.*, ¶ 7. Mr. Horigan indicated that he was interested in purchasing such a product, but he did not do so.

4

*Ibid.*, ¶ 7. On this call, NAPC's representative informed Horigan of his right to rescind the service contract within thirty days of purchase. *Ibid.*, ¶ 7, *Exhibit D*, lines 133–137.

NAPC made a follow up call to Horigan on October 20, 2017. *Ibid.*, ¶ 8; See *Finneran Dec.*, *Exhibit E* and DVD. Horigan, on that call, falsely claimed again that his name was "Christopher Miller." *Ibid.*, ¶ 8, *Exhibit E*, lines 140–142. The tape recording of the telephone call captures Horigan speaking to someone not participating on the call, to whom Horigan is overheard saying: "I'll just sign up for it and fucking cancel it," followed by discussion as to whether Horigan is "allowed to do that." *Ibid.*, ¶ 8, *Exhibit E*, lines 173–175.

During the October 20, 2017 telephone call, Horigan *confirmed that he had consented to be called on his wireless telephone*, saying, "...I think I signed up for you guys to call me...'cause I do need the coverage..." *Ibid.*, ¶ 9, *Exhibit E*, lines 249–250. Horigan also requested to see a copy of the "plan," i.e. vehicle service contract, which he is purporting to be interested in purchasing and is directed to the Sunpath website for a copy. *Ibid.*, ¶ 10, *Exhibit E*, lines 235–247. Horigan also requested that that he be sent an email so that he could be assured "you're with Sunpath." *Ibid.*, ¶ 10, *Exhibit E*, lines 249–250; 255–257. Horigan provided an email address of "Hor4XXX@yahoo.com,"[2] which appears to be his actual email address. *Ibid.*, ¶ 10, *Exhibit E*, lines 265–272.

## LEGAL ARGUMENT:

### POINT I:    PLAINTIFF CHRISTOPHER HORIGAN CANNOT ESTABLISH ARTICLE III STANDING

#### A.    Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1)

A plaintiff does not have standing to bring a complaint if he does not suffer an injury-in-fact that is fairly traceable to the challenged action and which is capable of redress by way of a

---

[2] Three digits of Horigan's email address have been redacted.

federal court's favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000)(*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *Comfort v. Lynn Sch. Comm.*, 150 F. Supp. 2d 285, 293-94 (D. Mass. 2001); *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). To establish the "irreducible constitutional minimum" of standing, a plaintiff must establish: (1) an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016) (*citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiffs have the burden to establish these elements. *Ibid.* (*citing FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

A plaintiff does not suffer an injury-in-fact under the TCPA if he consented to receiving the communications that the TCPA was designed to prevent. *Winner. v. Kohl's Dep't Stores, Inc.*, No. 16-1541, 2017 U.S. Dist. LEXIS 131225, at *17-18 (E.D. Pa. Aug. 17, 2017)(holding that "Because they consented to receiving the texts, Plaintiffs can show no concrete and particularized injury-in-fact and thus have not established that they have standing to pursue the claims asserted"). This is most logical, as the central purpose of the TCPA is to "ban[ ] certain practices invasive of privacy." *Zauderer v. Cirrus Consulting Group (USA), Inc.*, 265 F. Supp. 3d 104, 107 (D. Mass. 2017)(citation omitted).

A motion to dismiss for lack of standing is properly brought under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986); Erwin Chemerinsky, *Federal Jurisdiction* §§ 2.1, 2.3 (1994); 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure, Civil* 2d, § 3531.15, at 95 n. 9 (2d ed. 1984). Rule 12(b)(1) motions may be considered as a

6

"facial attack" or a "factual attack" on the allegations in the complaint. *Compagnie Mar. Marfret v. San Juan Bay Pilots Corp.*, 532 F. Supp. 2d 369, 372-73 (D.P.R. 2008). "In a facial attack, a defendant argues that the plaintiff did not properly plead jurisdiction…whereas a factual attack asserts that jurisdiction is lacking on the basis of facts outside of the pleadings." *Compagnie Mar. Marfret v. San Juan Bay Pilots Corp.*, 532 F. Supp. 2d 369, 372-73 (D.P.R. 2008); *Rivera Torres v. Junta de Retiro para Maestros*, 502 F.Supp.2d 242, 247 n.3 (D.P.R. 2007). When a factual attack is made, the court is not confined to the allegations in the complaint and can look beyond the pleadings to decide factual matters relating to jurisdiction. *Ibid.* A factual challenge can take place at any stage in the litigation, including before an answer is filed. *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 491 (D.N.J. 2008).

"The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction." *Fábrica de Muebles J.J. Álvarez, Incorporado v. Inversiones Mendoza, Inc.*, 682 F.3d 26, 32 (1st Cir. 2012)(quoting *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998). Once a defendant challenges the jurisdictional basis for a claim under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *Johansen v. U.S.*, 506 F.3d 65, 68 (1st Cir. 2007); *Zauderer, supra,* 265 F. Supp. 3d at 106. In analyzing a motion brought under Fed. R. Civ. P. 12, while the district court accepts as true all material allegations of the complaint and draws all reasonable inferences in favor of the complaining party, such does not end the 12(b)(1) analysis. *Comfort v. Lynn Sch. Comm., supra,* 150 F. Supp. 2d at 294; *Jenkins v. McKeithen*, 395 U.S. 411, 421-422, (1969). Rather, it is within a court's discretion to make "appropriate inquiry" beyond the pleadings to "satisfy itself on [its] authority to entertain the case." *Comfort v. Lynn Sch. Comm., supra,* 150 F. Supp. 2d at

294 *(quoting Gordon v. National Youth Work Alliance*, 218 U.S. App. D.C. 337, 675 F.2d 356, 362-63 (D.C. Cir. 1982; *Land v. Dollar*, 330 U.S. 731, 735 (1947).

If a plaintiff's standing does not adequately appear from all materials of record, including amendments to the complaint or affidavits, the complaint must be dismissed. *Warth v. Seldin*, 422 U.S. 490, 501-502 (1975). In making its determination, the "court may also 'consider whatever evidence has been submitted, such as the depositions and exhibits submitted.'" *Zauderer, supra*, 265 F. Supp. 3d at 106 (*quoting Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010)(*quoting Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996)); *Carroll v. U.S.*, 661 F.3d 87, 94 (1st Cir. 2011). A plaintiff cannot assert a proper jurisdictional basis "merely on 'unsupported conclusions or interpretations of law.'" *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995), *cert. denied*, 515 U.S. 1144 (1995)(*quoting Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1st Cir. 1993)); *Johansen, supra*, 506 F.3d at 68.

The standing determination thus hinges on whether a plaintiff has alleged a sufficient personal interest in the outcome of a controversy to justify a federal court exercising its remedial authority on its behalf. A plaintiff has a personal stake only where he himself has suffered some actual or threatened injury as a result of the alleged illegal action. *Warth, supra*, 422 U.S. 490 at 498-99. Moreover, a plaintiff must demonstrate standing separately for each form of relief sought. *Mack v. Suffolk County*, 191 F.R.D. 16 at *19 (D. Mass. 2000). Class representatives must show that they personally have been injured, and "not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth, supra*, 422 U.S. 490 at 502; *see also In re Bank of Boston Corp. Securities Litigation*, 762 F. Supp. 1525, 1531 (D. Mass. 1991)(citing *Brown v. Sibley*, 650 F.2d

8

760, 771 (5th Cir. 1981)("Standing cannot be acquired through the back door of a class action")); *Comfort v. Lynn Sch. Comm., supra*, 150 F. Supp. 2d at 294-95.

**B.  Standing Interwoven with the Telephone Consumer Protection Act**

The TCPA provides in pertinent part as follows:

(b) Restrictions on use of automated telephone equipment.
(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--
(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
\* \* \*
(iii) to any telephone number assigned to a...cellular telephone service...
47 U.S.C. § 227(b)(1)(A)(iii).

There are three general elements that a plaintiff must plead in its complaint to demonstrate standing in a TCPA case. "[T]he Plaintiff must plead that '(1) the Defendant called a cellular telephone; (2) using an ADTS; (3) without the recipient's prior express consent.'" *Jones v. FMA Alliance Ltd.*, 978 F. Supp. 2d 84, 86 (D. Mass. October 17, 2013)(Tauro, J.); 47 U.S.C. § 227(b)(1)(A)(iii); *Jones v. NCO Fin. Servs.*, Civil Action No. 13-12101-DJC, 2014 U.S. Dist. LEXIS 161169, at *4-5 (D. Mass. Nov. 14, 2014).

**C.  Plaintiff Christopher Horigan Lacks Standing to Sue NAPC Because He Consented to the Telephone Calls He Received. Accordingly, the Claims Against NAPC Must Be Dismissed.**

Horigan has not suffered an injury-in-fact, and therefore lacks standing to bring his complaint under the TCPA. Where a TCPA claimant has given consent to receive the communications at issue, there is no injury that can be redressed by a court, as one cannot consent to the very injury that would otherwise create a right of action. *Winner, supra*, 2017 U.S. Dist. LEXIS 131225 at *17-18. Thus, the paramount importance of consent in the analysis

of the legitimacy of any TCPA claim cannot be ignored, as the most basic prerequisite to such a claim is the claimant's non-consent to the receipt of the telephone calls. In the instant case, Horigan validly gave his written consent through a website, and reaffirmed that he gave such consent during a telephone call with NAPC on October 20, 2017 in which he confirmed that he "signed up for [NAPC] to call." *Finneran Dec.*, *Exhibit E*, line 250.

### i. Horigan Provided Express Consent to Receive NAPC's Telephone Calls

The complaint filed in this action alleges that NAPC called Horigan on one occasion, July 7, 2017, and solicited an extended warranty purchase for Sunpath's service, although the records of NAPC establish that two telephone calls were made. Irrespective of whether Horigan's complaint is predicated upon one call or two calls, Horigan received each call after he unequivocally gave his prior express written consent to receive same.

Indeed, on April 27, 2017, through the "wehaveloans.com" website, Horigan, using a fictitious name, "Colleen Korniotes," consented to receiving telephone calls on his wireless telephone, including calls made by automated telephone dialing systems. In doing so, he provided the very cellular telephone number that NAPC used to call him on both occasions: (508) XXX-4142. The web page by which Horigan opted in set forth the following terms, to which he agreed:

☐ By checking this box I agree to the following:
In accordance with the Telephone Consumer Protection Act (TCPA) of 1991 as amended effective Oct 16, 2013, by checking the box above, I agree to be contacted by your marketing partners and/or participating auto dealers including 1800CARSHOW, Detroit Trading, DriveTime, Sunrise Media Partners and other third parties about services via email and/or the phone number provided above, including my wireless number if provided. *Contact methods may include emails, phone calls generated from an automated telephone dialing system or text messaging. By checking the box, I*

*intend to sign this consent, I certify the information is correct and have read and understand the privacy policy.* I understand that this consent is not required as a condition of purchasing any goods or services. See our Privacy Policy for complete information about your privacy. *Finneran Dec., Exhibit C* (emphasis added).

Because the TCPA does not define the phrase "prior express consent," the Federal Communication Commission's Orders and Rulings are relied upon to interpret and clarify the term. *Van Patten v. Vertical Fitness Grp., Ltd. Liab. Co.*, 847 F.3d 1037, 1044 (9th Cir. 2017). Automated telemarketing calls to cellular telephones are not unlawful if made with the "prior express written consent of the called party." 47 C.F.R. § 64.1200(a)(2).

Prior express written consent is defined as:

"… an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or marketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

Such consent must satisfy the additional following requirements to be valid:

"(i) the written agreement shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property goods, or services.
(ii) The term 'signature' shall include an electronic or digital form signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law."

47 C.F.R. § 64.1200(f)(8); *Sullivan v. All Web Leads, Inc.*, No. 17 C 1307, 2017 U.S. Dist. LEXIS 84232, at *5-7 (N.D. Ill. June 1, 2017). "Clear and conspicuous" means "a notice that would be apparent to the reasonable consumer, separate and distinguishable from the

advertising copy or other disclosures." 47 C.F.R. § 64.1200(f)(3); *Barrera v. Guaranteed Rate, Inc.*, No. 17-cv-5668, 2017 U.S. Dist. LEXIS 175223, at \*5 (N.D. Ill. Oct. 23, 2017).

ii.     **The Consent Language on "wehaveautoloans.com" was Clear and Conspicuous, and Horigan was On Reasonable Notice of Same**

The website through which Horigan provided his consent, "wehaveautoloans.com," contained clear consent language. It alerted the plaintiff that "by checking [the] box" associated with the consent language, he was agreeing to the following salient language:

> In accordance with the Telephone Consumer Protection Act (TCPA) of 1991 as amended effective Oct 16, 2013…to be contacted by your marketing partners … and other third parties about services via email and/or the phone number provided above, including my wireless number if provided. Contact methods may include emails, phone calls generated from an automated telephone dialing system or text messaging…I understand that this consent is not required as a condition of purchasing any goods or services. *Finneran Dec.*, *Exhibit C*.

Thus, Horigan was clearly informed that "[b]y checking the box," he intended to provide consent. He further certified that the information he provided was correct. In addition, the consent language informed Horigan that the consent was not required as a condition of purchasing any goods or services. The font of the consent language was the same as the font for everything else contained on the webpage; the font was neither small, nor was the consent language inconspicuous. The consent language agreed to by Horigan was positioned *above* the "submit" button, thereby precluding any argument that Horigan did not see the language, or that it was not "clear and conspicuous." (*See*, e.g. *Sullivan v. All Web Leads, Inc.*, No. 17 C 1307, 2017 U.S. Dist. LEXIS 84232, at \*1 (N.D. Ill. June 1, 2017).

Indeed, under Massachusetts law, "whether or not plaintiff[] had *actual* notice of the terms of the Agreement, all that matters is that plaintiff[] has *reasonable* notice of the terms."

*Okereke v. Uber Techs., Inc.*, 2017 U.S. Dist. LEXIS 213807, *14 (D. Mass. June 13, 2017)(*citing Cullinane v. Uber Techs., Inc.*, 2016 U.S. Dist. LEXIS 89540, *7 (D. Mass. July 11, 2016)). Along those lines, "In Massachusetts courts, it has long been the rule that '[t]ypically, one who signs a written agreement is bound by its terms whether he reads and understands them or not.'" *Okereke, supra,* 2017 U.S. Dist. LEXIS 213807, *14 (internal citations omitted).

Here, of course, any argument advanced by Horigan that he did not consent to the terms underneath the "By checking this box I agree to the following" language is wholly without merit, first because he affirmatively clicked on the box prior to clicking "submit," and second because Horigan confirmed to the NAPC representative during the October 20, 2017 call that he "signed up for [NAPC] to call" because he "need[ed] the coverage…" *Finneran Dec., Exhibit E,* line 250.

### iii. Federal Courts Have Consistently Recognized "Clickwrap" Agreements as Valid and Enforceable

Federal courts have repeatedly upheld the enforceability of "clickwrap" agreements. *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 397, 2015 U.S. Dist. LEXIS 46899, *71 (E.D.N.Y. April 8, 2015)(holding that almost "[e]very [lower] court to consider the issue has found 'clickwrap' licenses, in which an online user clicks 'I agree' to standard form terms, enforceable"). District courts in Massachusetts similarly enforce clickwrap agreements "where the record established that the terms of the agreement were displayed, *at least in part*, on the user's computer screen and the user was required to signify his or her assent by '*clicking*' '*I accept*.'" *Okereke, supra*, 2017 U.S. Dist. LEXIS 213807 at *13-14 (*citing Bekele v. Lyft, Inc.,* 199 F. Supp. 3d 284, 295 (D. Mass. August 9, 2016)(quoting *Ajemian v. Yahoo!, Inc.*, 83 Mass.

App. Ct. 565, 576 (2013)). Provided that the agreement was displayed on the user's computer screen and required an affirmative action to manifest assent, "Massachusetts courts have routinely concluded that clickwrap agreements…provide users with reasonable communication of an agreement's terms." *Okereke, supra*, 2017 U.S. Dist. LEXIS 213807 at \*14(*citing Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 295 (D. Mass. August 9, 2016)).

Federal courts, meanwhile, have repeatedly held that clicking "accept" buttons is the functional equivalent of an electronic signature. *See*, e.g. *Mikhak v. Univ. of Phoenix*, 2016 U.S. Dist. LEXIS 80705, \*18 (N.D. Cal. June 21, 2016)(holding that "Electronic signatures and clicking 'Accept' are valid means of expressing assent to a contract"). *See also*, *W. Union Co. v. Tom Kula & Paymentus Grp., Inc.*, 2017 U.S. Dist. LEXIS 107594, \*12-13 (N.D. Ill. Jul. 12, 2017) (holding that "Courts typically find electronic acceptance of an agreement sufficient to support a valid contract where the party had 'reasonable notice of the terms' of the agreement and manifested assent to the agreement by clicking 'Accept'")(citing *Sgouros v. TransUnion Corp.*, No. 14 C 1850, 2015 U.S. Dist. LEXIS 13691, 2015 WL 507584, at \*4 (N.D. Ill. Feb. 5, 2015), *aff'd*, 817 F.3d 1029 (7th Cir. 2016)).

In this case, the consent language was positioned above the "submit" button. The consent language was clear in that Horigan was agreeing: "to be contacted by [wehaveautoloans.com] marketing partners…and other third parties about services via email and/or the phone number provided above, including my wireless number if provided. Contact methods may include emails, phone calls generated from an automated telephone dialing system or text messaging…" Finally, the consent language was accompanied by a box that Horigan had to actively click on in order for "wehaveautoloans.com" to accept his information. Therefore, the consent in the clickwrap agreement provided on the "wehaveautoloans.com" website

satisfies all of the requirements under Massachusetts law, and thus, constitutes valid, written consent. By giving his consent, plaintiff Horigan lacks standing to sue under the TCPA. *Winner. v. Kohl's Dep't Stores, Inc.*, No. 16-1541, 2017 U.S. Dist. LEXIS 131225, at *17-18 (E.D. Pa. Aug. 17, 2017).

> iv. **In Addition to Providing Express Consent, the Manner in Which Horigan Provided Consent, His Use Of False Names And His Expressed Intention Of Signing Up for the Warranty and Then Canceling It Show That Horigan Consented for the Purposes of Attempting to Establish a TCPA Claim, and Did Not Suffer Any Damage Sufficient to Establish Standing.**

Courts have dismissed TCPA cases on standing grounds where a plaintiff undertakes efforts to receive telephone calls from defendants for purposes of establishing liability against said defendants. For example, in *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 802 (W.D. Pa. 2016), the court held that because the plaintiff had admitted that her only purpose for purchasing her cell phones was to receive more calls so as to enable her to file TCPA lawsuits, she did not suffer an economic injury, and therefore, lacked standing. *Ibid.* The court noted that "only certain plaintiffs will have suffered the particularized injury required to maintain an action in federal court for a [TCPA] violation" and that "[s]omeone with a generalized interest in punishing telemarketers, for example, would not qualify on that basis alone." *Ibid.* (*citing Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 323 (3d Cir. 2015)); *see also Schumacher v. Credit Prot. Ass'n*, 2015 U.S. Dist. LEXIS 132752, *1, 2015 WL 5786139 (S.D. Ind. Sep. 30, 2015) (explaining that "an interest in statutory damages cannot be the sole injury to satisfy Article III requirements"); *Cellco P'ship v. Wilcrest Health Care Mgmt.*, 2012 U.S. Dist. LEXIS 64407, at *23-25 (D.N.J. May 8, 2012)(in holding that the plaintiffs did not have standing, noted the significance that "Plaintiffs have abandoned any claim to actual damages, but solely

seek statutory damages of $500 per call" and stated that "[t]he TCPA...anticipates damages on an individual basis because the contemplated plaintiff is an individual natural person or business *with a limited number of phone lines on which it might receive telemarketing calls*")(emphasis added).

**POINT II:   IN ADDITION TO DISMISSING HORIGAN'S INDIVIDUAL CLAIMS, THE PUTATIVE CLASS ACTION AS AGAINST NAPC MUST BE ALSO BE DISMISSED**

It is well-settled that "it is plaintiff's burden to show that a class action is a proper vehicle for the lawsuit." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 354 (3d Cir. 2013)(citation omitted). It is equally well-settled that in the event a named plaintiff fails to establish standing, said plaintiff may not invoke the power of the federal courts to seek relief on her own behalf or that of other members of a putative class. *Brown v. Am. Honda (In re New Motor Vehicles Canadian Exp. Antitrust Litig.)*, 522 F.3d 6, 13 (1st Cir. 2008); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). In the instant case, the only allegations against NAPC are made by Horigan. Heaton pleads no claims against NAPC. Therefore, dismissal of the claims of Horigan, who lacks standing to sue NAPC, should properly result in the dismissal of all claims against NAPC, including those on behalf of the putative class. *Brown, supra*, 522 F.3d 6 at 13.

**POINT III:   THE CLAIMS BROUGHT PURSUANT TO M.G.L. 93A MUST BE DISMISSED**

In addition to the TCPA claim, Horigan pleads a claim against NAPC pursuant to M.G.L. 93A. The M.G.L. 93A claim is expressly premised upon NAPC's alleged violation of the TCPA. Since plaintiff Horigan lacks standing to pursue claims against NAPC, and there is no independent basis for jurisdiction in this court over the claim pleaded pursuant to M.G.L. 93A, said claim must also be dismissed. Indeed, "...absent an independent basis for this

Court's subject matter jurisdiction under 28 U.S.C. §§ 1331 or 1332, i.e., a claim presenting either a federal question or a claim between parties from different states over an amount in controversy exceeding $75,000, a plaintiff's state law claims are subject to dismissal." *Parham v. Massachusetts*, No. 16-cv-11468-PBS, 2017 U.S. Dist. LEXIS 213808, at *10-11 (D. Mass. Aug. 21, 2017; *see also Fennick v. Allesandro,* No. 16-10957-PBS, 2016 U.S. Dist. LEXIS 76589, 2016 WL 3255014, at *4 (D. Mass. June 13, 2016)(ordering plaintiff to show cause as to why remaining state law claims should not be dismissed for lack of subject matter jurisdiction); *see also Martinez v. Colon*, 54 F.3d 980, 990 (1st Cir. 1995)(upholding district court's dismissal of pendent state law claims where federal claims were summarily dismissed). It should be noted that the claim pursuant to M.G.L. 93A, as pleaded, is expressly premised upon NAPC's alleged violation of the TCPA. Accordingly, in addition to the fact that there is no independent basis for jurisdiction in this Court for the M.G.L. 93A claim, since Horigan has no standing to pursue a TCPA claim, he likewise lacks standing to pursue the identical state law claim.

### CONCLUSION:

For all of the foregoing reasons and on the basis of the authority cited herein, NAPC respectfully requests that its motion to dismiss plaintiffs' complaint for lack of standing, pursuant to Fed. R. Civ. P. 12(b)(1), should be granted.

Respectfully submitted,
**Kaufman Dolowich & Voluck, LLP**
*Attorneys for Defendant,*
*National Auto Protection Corporation*

By:  /s/  Gino A. Zonghetti
Gino A. Zonghetti, Esq.
BBO #663120

Dated: February 23, 2018

17

I certify that a true copy of the above document was served upon each attorney of record by ECF and Regular Mail.

Dated: February 23, 2018

/s/  Gino A. Zonghetti
Gino A. Zonghetti, Esq.
BBO #663120