Kaufman Dolowich & Voluck, LLP
21 South Main Street, Suite 251
Hackensack, New Jersey 07102
(201) 708-8240
Attorneys for Defendant, National Auto Protection Corporation

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WORCESTER DIVISION

| | |
|---|---|
| JOHN HEATON and CHRISTOPHER HORIGAN on behalf of themselves and others similarly situated,<br><br>            Plaintiffs,<br>-against-<br><br>MOTOR VEHICLE ASSURANCE, NATIONAL AUTO PROTECTION CORP, and SUNPATH, LTD.,<br><br>            Defendants. | Case No. 4:17-cv-40169-TSH<br><br>**DECLARATION OF GINO A. ZONGHETTI IN SUPPORT OF MOTION TO DISMISS OF NATIONAL AUTO PROTECTION CORP. PURSUANT TO FED. R. CIV. P. 12(b)(1)** |

Gino A. Zonghetti, Esq. declares as follows:

1.     I represent defendant National Auto Protection Corp. ("NAPC") in the above matter. I submit this Declaration in support of NAPC's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1).

2.     Annexed hereto as Exhibit 1 is a true and accurate copy of the complaint that was filed and served in this action.

3.     It is respectfully urged that the Court grant NAPC's motion to dismiss.

1

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

**Kaufman Dolowich & Voluck, LLP**
*Attorneys for Defendant,*
*National Auto Protection Corporation*

By:  /s/  Gino A. Zonghetti
Gino A. Zonghetti, Esq.
BBO#: 663120
21 Main Street, Suite 251
Hackensack, New Jersey 07601
(201) 708-8240
gzonghetti@kdvlaw.com

Dated: February 22, 2018

I certify that a true copy of the above document was served upon each attorney of record by ECF and Regular Mail.

Dated: February 23, 2018

/s/  Gino A. Zonghetti
Gino A. Zonghetti, Esq.
BBO #663120

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
for the
## DISTRICT OF MASSACHUSETTS

**JOHN HEATON, ET AL.**

*Plaintiff*

v.

Civil Action No.:
**4:17−CV−40169−TSH**

**MOTOR VEHICLE ASSURANCE, ET AL.**

*Defendant*

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

> National Auto Protection
> 931 Village Blvd., Suite 905-290
> West Palm Beach, FL 33409

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) —— or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) —— you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Broderick & Paronich, P.C.
> 99 High Street, Suite 304
> Boston, MA 02110

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.



**ROBERT M. FARRELL**

*CLERK OF COURT*

**/s/ − Sherry Jones**

*Signature of Clerk or Deputy Clerk*

**ISSUED ON 2017−12−18 13:32:27.0**, Clerk USDC DMA

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JOHN HEATON and CHRISTOPHER HORIGAN

**(b)** County of Residence of First Listed Plaintiff     Worcester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Broderick & Paronich, P.C.
99 High St., Suite 304
Boston, MA 02110, (508) 221-1510

## DEFENDANTS

MOTOR VEHICLE ASSURANCE, NATIONAL AUTO PROTECTION CORP and SUNPATH, LTD.,

County of Residence of First Listed Defendant     Ocean
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question
  *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                            *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product     Product Liability | |     28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument |     Liability   ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &     Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
|     & Enforcement of Judgment |     Slander     Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'     Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted |     Liability   ☐ 368 Asbestos Personal | | ☐ 840 Trademark |     Corrupt Organizations |
|     Student Loans | ☐ 340 Marine     Injury Product | | | ☐ 480 Consumer Credit |
|     (Excludes Veterans) | ☐ 345 Marine Product     Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment |     Liability   **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
|     of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud |     Act | ☐ 862 Black Lung (923) |     Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 190 Other Contract |     Product Liability   ☐ 380 Other Personal |     Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal     Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise |     Injury   ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury -     Product Liability |     Leave Act | |     Act |
| |     Medical Malpractice | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** |     Income Security Act | ☐ 870 Taxes (U.S. Plaintiff |     Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | |     or Defendant) |     Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/     Sentence | |     26 USC 7609 |     State Statutes |
| ☐ 245 Tort Product Liability |     Accommodations   ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 535 Death Penalty | **IMMIGRATION** | | |
| |     Employment   **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| |     Other   ☐ 550 Civil Rights |     Actions | | |
| | ☐ 448 Education   ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| |     Conditions of | | | |
| |     Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 U.S.C. § 227

Brief description of cause:
A putative class action lawsuit for automated telemarketing pursuant to the Telephone Consumer Protection Act

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 5,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
12/18/2017

SIGNATURE OF ATTORNEY OF RECORD
/s/ Anthony I. Paronich

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WORCESTER DIVSION**



JOHN HEATON and CHRISTOPHER
HORIGAN on behalf of themselves and
others similarly situated,

      Plaintiffs,

v.

MOTOR VEHICLE ASSURANCE,
NATIONAL AUTO PROTECTION
CORP, and SUNPATH, LTD.

      Defendants.

Case No.

## <u>CLASS ACTION COMPLAINT</u>

### Preliminary Statement

1.    Plaintiffs John Heaton and Christopher Horigan bring this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.    Sunpath Ltd. ("Sunpath") hired National Auto Protection Corp to originate new customers, and National Auto Protection Corp initiated a pre-recorded telemarketing call to a cellular telephone number or Mr.Horigan as well as the cellular telephone of other putative class members for the purposes of advertising Sunpath goods and services, using an automated dialing system, which is prohibited by the TCPA.

3.     Similarly, Motor Vehicle Assurance placed an automated telemarketing call to Mr. Heaton's cellular telephone in violation of the TCPA, as well as the cellular telephone of other putative class members, and did so for the purposes of advertising Sunpath goods and services

4.     The Plaintiffs never consented to receive the calls, which were placed to them for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

5.     A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

6.     Plaintiff John Heaton is a resident of Worcester County, Massachusetts.

7.     Plaintiff Christopher Horigan is a resident of the Commonwealth of Massachusetts

8.     Defendant Sunpath, Ltd. is a Delaware corporation that has its principal office in Braintree, MA, and conducts business in this District.

9.     National Auto Protection Corp is a company with its principal place of business West Palm Beach, FL. National Auto Protection Corp engages in telemarketing nationwide, including into this District.

10.     Motor Vehicle Assurance is a company located in Toms River, NJ. Motor Vehicle Assurance engages in telemarketing nationwide, including into this District.

2

### Jurisdiction & Venue

11.     The Court has federal question subject matter jurisdiction over these TCPA

claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because the Defendants are

residents of this district for Venue purposes. Venue is also proper pursuant to 28 U.S.C. §

1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred

in this district as the telemarketing calls that gave rise to the Plaintiff's claims were made into

this district, and the Plaintiffs' cellular telephone, a substantial portion of the property at issue

for these claims, are located in this district.

### The Telephone Consumer Protection Act

13.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the

telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L.

No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

14.     The TCPA makes it unlawful "to make any call (other than a call made for

emergency purposes or made with the prior express consent of the called party) using an

automatic telephone dialing system or an artificial or prerecorded voice … to any telephone

number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The

TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C.

§ 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

15.     According to findings by the Federal Communication Commission ("FCC"), the

agency Congress vested with authority to issue regulations implementing the TCPA, such calls

are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

16.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

17.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

### Factual Allegations

18.     Sunpath is a company that offers extended warranties on automobiles.

19.     To generate new clients, Sunpath relies on telemarketing.

20.     However, Sunpath's contact with the potential new customers is limited, and the telemarketing is conducted by third parties.

4

21.     One of Sunpath's strategies for telemarketing involve hiring third parties that make use of an automatic telephone dialing system ("ATDS") to solicit potential customers through the use of a predictive dialer.

22.     Coupled with that technology, Sunpath also has some of its third parties employ the use of pre-recorded messages, which require the consumer to affirmatively respond to an automated message before they can speak with a live person.

23.     Sunpath engages this use of this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

24.     Through this method, Sunpath shifts the burden of wasted time to the consumers it calls with unsolicited messages.

Call to Mr. Heaton

25.     Mr. Heaton is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

26.     Mr. Heaton's cellular telephone number is (508) 330-XXXX.

27.     Motor Vehicle Assurance placed an automated telemarketing call to Mr. Heaton on October 18, 2017.

28.     When the call was answered, there was a lengthy pause and a click followed by silence, which indicated to the Plaintiff that the call was made using an ATDS.

29.     In fact, when Mr. Heaton sent a M.G.L. c. 93A letter to the company asserting that they used an ATDS to contact him, they did not deny that and instead acknowledged that use of an ATDS was prohibited.

30.     When the Plaintiff finally connected with a live individual, he was solicited for an extended warranty purchase, and was informed that the company's website was www.gosunpath.com.

31.     That website belongs to the co-defendant Sunpath.

32.     Confirming that the call was made by Motor Vehicle Assurance, the Plaintiff spoke with a "Kendra Brooks" who identified herself as a Customer Service Manager and was given the e-mail address kbrooks@mvacoverage.com.

33.     The Caller ID that displayed on the telemarketing call was 215-595-9075.

34.     Other individuals have complained about receiving solicitation calls from the same CID:

> **sjm**
> 25 Sep 2017
> "Vehicle Warranty" scam. Call blocked the number and turned a complaint into the FCC Do Not Call website.
> *Caller: Vehicle Warranty*
> *Call type: Telemarketer*
>
> **Kera**
> 27 Sep 2017
> "Vehicle Warranty" scam. She called asking what type of vehicle I owned. I said you called me saying my warranty needed to be extend, so you tell me. She didn't know. When I told her I wasn't interested, she hung up on me (rude). I blocked the number.
> *Caller: Rachel*
> *Call type: Scam suspicion*

https://800notes.com/Phone.aspx/1-215-595-9075 (Last Visited November 30, 2017).

35.     The callback number Mr. Heaton was given on the telemarketing call was (877) 747-6982.

36.     Other individuals have complained about receiving solicitation calls from the same CID:

> *Posted 31 Jul 2017*

6

Pushing to sell warranty on a car very rude people

http://findwhocallsyou.com/8777476982?CallerInfo (Last Visited November 30, 2017).

Calls to Mr. Horigan

37.     Mr. Horigan is, and at all times mentioned herein, a "person" as defined by
47 U.S.C. § 153(39).

38.     National Auto Protection Corp placed a pre-recorded telemarketing call to him on
July 7, 2017.

39.     When the call was answered, there was a lengthy pause and a click followed by
silence before a pre-recorded message came on the line, which indicated to the Plaintiff that the
call was made using an ATDS.

40.     In fact, the use of a pre-recorded message itself is indication that the calls were
made with an ATDS, as it would not make any logical sense to hand-dial a call only to play a
pre-recorded message.

41.     To identify the calling party, the Plaintiff pressed 1.

42.     When the Plaintiff finally connected with a live individual, he was solicited for an
extended warranty purchase for Sunpath services.

43.     When the Plaintiff initially attempted to identify the company that was calling
him, he was told the company was www.sunpath.com.

44.     That website belongs to the co-defendant Sunpath.

45.     Plaintiffs and the other call recipients were harmed by these calls. They were
temporarily deprived of legitimate use of their phones because the phone line was tied up, they
were charged for the calls and their privacy was improperly invaded.

46.     Moreover, these calls injured Plaintiffs because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

47.     Plaintiffs and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

48.     Moreover, these calls injured plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

## Sunpath's Liability for the Telemarketing Calls

49.     Sunpath is a "person," as defined by 47 U.S.C. § 153(39).

50.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

51.     In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

52.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Sunpath may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies)

8

would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

53.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 FCC Rcd at 6586 (¶ 34).

54.     The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call.  *Id.* at 6587 n. 107.

55.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 CC Rcd at 6592 (¶ 46).

56.     Sunpath is legally responsible for ensuring that Motor Vehicle Assurance and National Auto Protection Corp complied with the TCPA, even if Sunpath did not itself make the calls.

57.     Sunpath knowingly and actively accepted business that originated through the illegal telemarketing calls from National Auto Protection Corp and Motor Vehicle Assurance.

58.     In fact, Sunpath accepted the business from illegal calls from the defendants, even while it was being sued in another TCPA putative class action alleging that the third parties working on its behalf were violating the TCPA.

59.     By hiring a company to make calls on its behalf, Sunpath "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

60.     Similarly, by accepting these contacts, Motor Vehicle Assurance and the National Auto Protection Corp "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Sunpath, as described in the Restatement (Third) of Agency. As such, National Auto Protection Corp and Motor Vehicle Assurance are agents of Sunpath.

61.     Moreover, Sunpath maintained interim control over National Auto Protection Corp's and Motor Vehicle Assurance's actions.

62.     For example, Sunpath had absolute control over whether, and under what circumstances, it would accept a customer.

63.     Furthermore, Sunpath had day-to-day control over Motor Vehicle Assurance and National Auto Protection Corp's actions, including the ability to prohibit it from using an ATDS or pre-recorded messages to contact potential customers of Sunpath. Sunpath failed to make such

an instruction to these companies, and as a result, is liable for National Auto Protection Corp and Motor Vehicle Assurance's conduct.

64.     Additionally, Sunpath restricted the geographic location that National Auto Protection Corp and Motor Vehicle Assurance could promote Sunpath.

65.     Sunpath also gave interim instructions to National Auto Protection Corp and Motor Vehicle Assurance by providing the volume of calling and contracts it would purchase.

66.     Sunpath also gave National Auto Protection Corp, and Motor Vehicle Assurance, the power to affect its legal relations. In fact, Sunpath is believed to give the third parties that call on their behalf, including the co-defendants, a form contract to use to sign up new customers that receive telemarketing calls that include the following terms:

- "this SERVICE CONTRACT is between YOU and SunPath LTD Corp. d/b/a SunPath LTD Corp of Delaware" (defined in the contract as the "ADMINISTRATOR)
- "Sunpath is also the SERVICE CONTRACT ADMINISTRATOR and handles all administrative functions of this SERVICE CONTRACT."
- "All inquiries should be directed to SunPath LTD Corp. of Delaware at 888-990-7786."
- "the ADMINISTRATOR will approve the claim and pay the charges in accordance with the terms of this SERVICE CONTRACT"

*See* Exhibit 1.

67.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

### Class Action Allegations

68.      As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring

this action on behalf of classes of all other persons or entities similarly situated.

69.      The classes of persons Plaintiffs propose to represent is tentatively defined as:

TCPA CLASS

All persons within the United States: (a) Defendants and/or a third party acting on
their behalf, made one or more non-emergency telephone calls; (b) to their cellular
telephone number; (c) using an automatic telephone dialing system or an artificial
or prerecorded voice; and (d) at any time in the period that begins four years before
the date of filing this Complaint to trial.

M.G.L. 93A CLASS

All persons within the Commonwealth of Massachusetts to whom: (a) Defendants
and/or a third party acting on their behalf, made one or more non-emergency
telephone calls; (b) to their cellular telephone number; (c) through the use of an
automatic telephone dialing system or an artificial or prerecorded voice; and (d) at
any time in the period that begins four years before the date of filing this Complaint
to trial.

70.      Excluded from the classes are the Defendants, and any entities in which the

Defendants have a controlling interest, the Defendants' agents and employees, any judge to

whom this action is assigned and any member of such judge's staff and immediate family.

71.      The classes as defined above are identifiable through phone records and phone

number databases.

72.      The potential classes number at least in the thousands, since automated and pre-

recorded telemarketing campaigns make calls to hundreds or thousands of individuals a day.

Individual joinder of these persons is impracticable.

73.      Plaintiffs are members of the TCPA class and Plaintiff Heaton is a member of the

M.G.L. 93A class.

74.     There are questions of law and fact common to Plaintiffs and to the proposed

classes, including but not limited to the following:

        a.      Whether Defendants violated the TCPA by using automated telemarketing

to call cellular telephones;

        b.      Whether Defendants placed calls using a pre-recorded message;

        c.      Whether Defendants placed calls without obtaining the recipients' prior

consent for the call;

        d.      Whether the Plaintiff and the classes members are entitled to statutory

damages because of Defendants' actions.

75.     Plaintiffs' claims are typical of the claims of class members. Plaintiffs' claims,

like the claims of the Classes arise out of the same common course of conduct by Defendants

and are based on the same legal and remedial theories.

76.     Plaintiffs are an adequate representative of the classes because their interests do

not conflict with the interests of the classes, they will fairly and adequately protect the interests

of the classes, and they are represented by counsel skilled and experienced in classes actions,

including TCPA class actions.

77.     Common questions of law and fact predominate over questions affecting only

individual class members. The only individual question concerns identification of class

members, which will be ascertainable from records maintained by Defendants and/or its agents.

78.     Management of these claims is likely to present significantly fewer difficulties

than are presented in many class claims because the calls at issue are all automated.  Class

treatment is superior to multiple individual suits or piecemeal litigation because it conserves

judicial resources, promotes consistency and efficiency of adjudication, provides a forum for

small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

79.    The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

80.    Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for the classes' membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's Automated Calling provisions

81.    Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

82.    The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiffs and members of the Class using an ATDS and/or artificial or prerecorded voice.

83.    As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiffs and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

84.    Plaintiffs and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for

14

emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

85.     The Defendants' violations were negligent and/or knowing.

## Count Two:
## Violation of M.G.L. 93A

86.     Plaintiffs incorporates the allegations from all previous paragraphs as if fully set forth herein.

87.     At all relevant times the Defendants were engaged in commerce for purposes of M.G.L., c. 93A.

88.     M.G.L., c. 93A, § 2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." M.G.L., c. 93A, § 9 permits any consumer injured by a violation of c. 93A, § 2 to bring a civil action, including a class action, for damages and injunctive relief.

89.     As alleged more fully herein, Defendants have violated c. 93A, § 2 by sending automated calls to Plaintiffs and other Massachusetts putative class members. This conduct is unfair because it is harassing and annoying and invades the privacy of Plaintiffs and the putative class members and because it causes them to incur costs for the calls.

90.     Defendants conduct also violates the TCPA and as such, constitutes unfair and deceptive conduct in violation of c. 93A, § 2.

91.     Pursuant to M.G.L., c. 93A, § 9, Plaintiffs on behalf of themselves and the MGL C. 93A Class, seeks an order:

   a) Enjoining Defendants from continuing to engage in, use, or employ any of the unfair and/or deceptive business acts or practices set forth in detail above; and
   b) Disgorging and restoring all monies that may have been acquired by Defendants as a result of such unfair and/or deceptive acts or practices.

92.     The Plaintiffs made a written demand for relief pursuant to Massachusetts General Laws chapter 93A section 9(3) and the Defendants have failed to make a timely and adequate response, thereby entitling the Plaintiffs and the putative class to judgment on this Count and for all damages authorized by statute.

93.     Based on the foregoing, Plaintiffs and the other members of the Massachusetts Subclass are entitled to all remedies available under c. 93A, § 9, including, but not limited to, actual or statutory damages, whichever is greater, multiple damages, attorneys' fees and costs.

## Relief Sought

For himself and all class members, Plaintiffs request the following relief:

A.     Certification of the proposed Classes;

B.     Appointment of Plaintiffs as representative of the Classes;

C.     Appointment of the undersigned counsel as counsel for the Classes;

D.     A declaration that Defendants and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E.     An order enjoining Defendants and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F.     An award to Plaintiffs and the Classes of damages, as allowed by law;

G.     Leave to amend this Complaint to conform to the evidence presented at trial; and

H.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiffs request a jury trial as to all claims of the complaint so triable.**

PLAINTIFFS,
By their attorneys

*/s/ Anthony I. Paronich*
Edward A. Broderick
Anthony I. Paronich
Broderick & Paronich, P.C.
99 High St., Suite 304
Boston, MA 02110
(508) 221-1510
anthony@broderick-law.com

Alex M. Washkowitz
Jeremy Cohen
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
mmccue@massattorneys.net

# MILEAGE PLUS

## Coverage with Roadside Assistance

### 888.990.7786

## Deluxe Coverage Plan

This **SERVICE CONTRACT** is an agreement between **YOU** and **US**. **WE, US, OUR** and **PROVIDER** refer to Northcoast Warranty Services, Inc., who is the party responsible to **YOU** for the benefits under this SERVICE CONTRACT. **YOU, YOUR** and **CONTRACT HOLDER** refers to YOU, the purchaser of this SERVICE CONTRACT and the Vehicle described in the DECLARATION PAGE of this SERVICE CONTRACT. WE have contracted with SunPath, Ltd., 25 Braintree Hill Park, Suite 100, Braintree, MA 02184, 888-990-7786, hereinafter referred to as **ADMINISTRATOR**, to administer this SERVICE CONTRACT. All inquiries should be directed to the ADMINISTRATOR. Toll-free assistance is available at 888-990-7786.

In Florida this SERVICE CONTRACT is between YOU and SunPath LTD Corp. d/b/a SunPath LTD Corp of Delaware, Florida Certificate of Authority No.: 19943. SunPath LTD Corp. d/b/a SunPath LTD Corp of Delaware is also the SERVICE CONTRACT ADMINISTRATOR and handles all administrative functions of this SERVICE CONTRACT. All inquiries should be directed to SunPath LTD Corp. of Delaware at 888-990-7786.

### DEFINITIONS

- AUTHORIZED REPAIR(S), APPROVED REPAIR(S): All repairs must be approved and authorized by the ADMINISTRATOR as a condition of COVERAGE. Repairs performed without the prior approval or authorization from the ADMINISTRATOR will not be covered, except as provided for under Emergency Repairs.
- BREAKDOWN, MECHANICAL BREAKDOWN, MECHANICAL FAILURE: Defects in materials and workmanship of a COVERED PART to perform the function for which it was designed by its manufacturer.
- COVERAGE: The coverage afforded to YOU for YOUR VEHICLE is determined by the PLAN TYPE selected on the DECLARATION PAGE and more fully described in the PLAN COVERAGE section of this SERVICE CONTRACT.
- COVERED PART(S): Parts or components listed under the PLAN COVERAGE and subject to YOUR responsibilities for VEHICLE maintenance under the YOUR OBLIGATIONS section and subject to conditions described under "EXCLUSIONS".
- CONTRACT NUMBER: YOUR "CONTRACT NUMBER" on the DECLARATION PAGE is a unique number that identifies YOU, YOUR VEHICLE and YOUR COVERAGE. Please refer to this number with any communication regarding YOUR coverage or when filing a claim.
- DECLARATION PAGE: The page of this CONTRACT that specifies YOUR information, VENDOR information, applicable lien holder information (if any), COVERAGE selected by YOU, and other information pertaining to YOUR CONTRACT.
- DEDUCTIBLE: The amount on the DECLARATION PAGE that YOU will have to pay when YOU have a claim.
- EXPIRATION: YOUR SERVICE CONTRACT expires in accordance with the CONTRACT TERM that YOU purchased. The CONTRACT TERM is listed on the DECLARATION PAGE of this CONTRACT. All plans expire by time or mileage, whichever occurs first. Expiration by time is measured from the CONTRACT purchase date. Expiration by mileage is measured from the odometer mileage of YOUR VEHICLE on the CONTRACT purchase date.
- FACTORY, FACTORY WARRANTY: The Manufacturer of the VEHICLE and all warranty coverage provided to YOU by the Manufacturer of the VEHICLE at no additional cost. The FACTORY WARRANTY covers repairs to YOUR VEHICLE to correct any defects in components or workmanship.
- LIMITS OF LIABILITY: The total amount of OUR liability to YOU for the aggregate of covered claims paid, as set forth in this GENERAL PROVISIONS section of SERVICE CONTRACT.
- SERVICE CONTRACT, CONTRACT: This SERVICE CONTRACT issued to YOU and covering YOUR VEHICLE as listed on the DECLARATION PAGE.
- VALIDATION PERIOD: YOUR COVERAGE is subject to a VALIDATION PERIOD of time and mileage from the date of CONTRACT purchase. There is NO COVERAGE during the VALIDATION PERIOD. The length of the VALIDATION PERIOD is listed on the DECLARATION PAGE of this CONTRACT and YOUR COVERAGE is effective the day following the expiration of the VALIDATION PERIOD. The time and mileage contained in YOUR

- VEHICLE, YOUR VEHICLE: YOUR eligible passenger VEHICLE (1 ton or less) listed on the DECLARATION PAGE of YOUR SERVICE CONTRACT.
- VENDOR: The VENDOR from which YOU purchased the CONTRACT.

## OUR OBLIGATIONS

Vehicle Repairs: Subject to the terms and conditions set forth in this CONTRACT, WE will pay YOUR repair facility or reimburse YOU for the reasonable parts and labor charges to repair or replace any BREAKDOWN of a part listed in the Plan Coverage Section of the plan that YOU have selected on the DECLARATION PAGE. All repairs must be approved and authorized by the ADMINISTRATOR as a condition of COVERAGE. Repairs performed without the prior approval or authorization of the ADMINISTRATOR will not be covered, except as provided for under Emergency Repairs. The ADMINISTRATOR will be solely responsible for determining the method of repair and amount of repair authorization. **Replacement parts may be new, used, remanufactured, or replacement parts of like kind and quality ("lkq"). Authorization for approved part charges will be determined by available published retail pricing, or prevailing manufacturers' suggested retail price (M.S.R.P.)** as determined by the ADMINISTRATOR. Approved labor charges will be determined using nationally published flat-rate manuals. The ADMINISTRATOR, in its sole discretion, will determine the labor rate for authorized repairs based on the average labor rate of repair facilities in the area. The labor rate will not exceed the posted labor rate of the repair facility. In the event YOU have selected the Enhanced Labor Option on the DECLARATION PAGE, the approved labor rate will be the posted rate of the repair facility.

- **Trip Interruption**: WE will reimburse YOU a maximum of two hundred forty dollars ($240.00) for lodging and meal expenses incurred by YOU should YOUR VEHICLE failure and covered repairs occur more than 100 miles from YOUR place of residence and YOU are stranded overnight. Reimbursement is limited to eighty dollars ($80.00) per day for charges incurred between the time YOUR VEHICLE failed and the time it is repaired.

- **Rental Vehicle Expense**: COVERAGE is calculated as follows: For every (7) hours of authorized labor approved by the ADMINISTRATOR, YOU qualify for one (1) day of reimbursement. Notwithstanding the foregoing, if an authorized claim requires more than four (4) hours of authorized labor, YOU will qualify for YOUR first day of reimbursement. If the ADMINISTRATOR requires an inspection which causes a delay, YOU will qualify for one additional day of reimbursement. At all times, the maximum benefit is $35.00 per day. In all cases, total reimbursement will not exceed $175.00. At no time will this benefit exceed the amount YOU were charged for vehicle rental, or otherwise include days that YOUR VEHICLE was not at the repair facility.

- **24 Hour Roadside Assistance:** YOUR VEHICLE will be covered over the term of YOUR SERVICE CONTRACT. Towing benefit is a maximum of one hundred dollars ($100.00) per occurrence and lock out service, fuel, fluid, or battery boost/jump (excluding the cost of fluids or fuel) up to a maximum of one hundred dollars ($100.00) per occurrence. If YOUR VEHICLE requires Roadside Assistance, YOU must contact the Roadside Service Processing Center for prior approval and assistance. YOU will be provided with YOUR Roadside Assistance number by the ADMINISTRATOR as part of YOUR fulfillment documentation. The use of this Roadside benefit is limited to one (1) service type during any seven (7) day period. Please Note: The 24 Hour Roadside Assistance benefit is not intended to provide reimbursement of service secured independently of this CONTRACT. Fees for services incurred independently are NOT covered.

## YOUR OBLIGATIONS

- **YOU or YOUR repair facility must obtain approval prior to having any work performed on YOUR VEHICLE that may be covered by this SERVICE CONTRACT.** If YOU believe the failure may be covered by this SERVICE CONTRACT, YOU must have YOUR repair facility call the ADMINISTRATOR at 888-990-7786. **The ADMINISTRATOR must authorize any work before the work is performed.**

Repairs performed without the prior approval of an ADMINISTRATION or the ADMINISTRATOR will not be covered, except as provided for under Emergency Repairs.

- **YOU must maintain YOUR VEHICLE in accordance with manufacturer's specifications and maintenance schedules. Keep all receipts and licensed repair facility records that demonstrate YOUR compliance with this provision.** Proof of maintenance may be required when YOU file a claim. Failure to follow the manufacturer's maintenance schedule for YOUR VEHICLE may result in the denial of COVERAGE. Maintenance receipts must identify YOUR VEHICLE, date and mileage at the time of service, parts and labor charges, and originate from a licensed repair facility. If maintenance has been provided by YOU, then a detailed log including all dates and services with corresponding sales receipts for parts will be required.

- YOU are responsible for authorizing any teardown or diagnosis time needed to determine if YOUR VEHICLE has a covered failure. If it is subsequently determined that YOUR VEHICLE has a covered failure, the ADMINISTRATOR will approve the claim and pay the charges in accordance with the terms of this SERVICE CONTRACT. YOU will be responsible for any charges if it is determined that the failure is not covered by the plan that YOU have selected or under the terms of YOUR SERVICE CONTRACT.

- YOU are responsible for paying the DEDUCTIBLE for any claim authorized by the ADMINISTRATOR. ONLY ONE DEDUCTIBLE WILL APPLY TO ANY CLAIM, although a claim may include multiple component groups or parts replacements that are part of the repair. The amount of YOUR DEDUCTIBLE is listed on YOUR DECLARATION PAGE. YOUR DEDUCTIBLE does not apply to Roadside or Trip Interruption benefits that may be included in the plan YOU selected.

## *GENERAL PROVISIONS*

LIMITS OF LIABILITY: Our liability under this CONTRACT is limited. During the CONTRACT TERM, the aggregate sum of all claims shall in no event exceed the limit stated below:

### LIMIT OF LIABILITY: $15,000

Once the aggregate sum of all claims and benefits paid or payable under this CONTRACT reaches $15,000, this CONTRACT shall become fully earned and no further claims can be made against US. Once the LIMITS OF LIABILITY have been reached, this CONTRACT and all rights there under shall terminate.

TERMINATION: This CONTRACT will immediately terminate if YOUR VEHICLE is sold or traded unless YOU have transferred this CONTRACT in accordance with the transfer provision listed in this CONTRACT.

## *PLAN COVERAGE*

### *THESE PARTS ARE COVERED:*

This CONTRACT covers ONLY the components/parts listed below:

(1) **ENGINE:** (Gas or Diesel): All internally lubricated parts within the Engine including: Pistons, Piston Rings, Crankshaft and Main Bearings, Connecting Rods and Rod Bearings, Camshaft and Camshaft Bearings, Timing Chain, Timing Chain Tensioner, Timing Gears, Intake and Exhaust Valves, Valve Springs, Valve Guides, Oil Pump, Push Rods, Rocker Arms, Rocker Arm Shafts, Hydraulic and Solid Lifters, Harmonic Balancer. The Engine Block, Heads, Timing Cover, Valve Cover(s) and Oil Pan are covered only if damage is caused by a FAILURE of any of the COVERED PARTS listed in this paragraph.

(2) **TRANSMISSION:** All internal components of the transmission that require lubrication for operation, including Oil Pump, Drums, Planetaries, Sun Gear and Shell, Shaft(s), Bearings, Shift Rail, Forks, and Synchronizers. Torque Converter, Vacuum Modulator, Accumulator, Internal Solenoids. Transmission Case and Pan are covered only if damaged by the failure of an internally lubricated transmission component.

(3) **DIFFERENTIAL ASSEMBLY:** (Front and Rear) Axle Shaft, Ring and Pinion, Bearings, Bushings, Washers, Differential Housing and Differential Cover only if damage is caused by a FAILURE of

(4) **DRIVE AXLE:** (Front and Rear) Drive Axle, Locking Hubs, and Constant Velocity Joints (CV boots must not be torn at time of failure), Center Support Bearings, Drive Shaft and Universal Joints.

(5) **TRANSFER UNIT:** (4x4): Internally lubricated parts within the Transfer Unit including Bearings, Bushings, Sprockets, Chains, Sleeves, Shift Forks and Gears (excluding electrical items). The Transfer Case is only covered if damage is caused by a FAILURE of any of the above COVERED PARTS.

(6) **COOLING SYSTEM:** Water Pump & Housing, Cooling Fan, Fan Clutch, and Engine Cooling Fan Motor.

(7) **AIR CONDITIONING:** Condenser, Compressor, Evaporator, Expansion Valve and Blower Motor. Coverage is also provided for the Accumulator/Receiver Dryer and Orifice Tube if replaced as part of an otherwise covered repair.

(8) **FUEL SYSTEM:** Fuel Pump, Fuel Injection Pump and Metal Fuel Delivery Lines.

(9) **ELECTRICAL:** Alternator, Voltage Regulator, Starter Motor, Ignition Switch, Front and Rear Window Wiper Motors, Head Lamp Switch, Turn Signal Switch, Rear Defogger Switch, Air Conditioning Blower Switch, Power Window Motors and Power Door Lock Actuators/Switches.

(10) **ELECTRICAL PLUS:** Engine and Dashboard Main Wiring Harness, Washer Pump Motor, Electronic Instrument Cluster, Fuel Gauge, Cooling Sender, Cruise Control Module, Power Seat Motor, Convertible Top Motor, Power Sunroof Motor, Power Seat Switch, Neutral Safety Switch, Reverse Indicator Switch, Stop Lamp Switch, Overdrive Switch, Radiator Cooling Fan Motor, Reverse Indicator Switch, Electric Horn, Cruise Control Transducer, Engagement switch and Servo, Distributor, Horns, Power Antenna Motors, Washer Pump Motors, Window Regulators, Ignition Coils, Knock sensor, Crankshaft Position Sensor, Camshaft Position Sensor.

(11) **STEERING:** All internal parts contained within Rack and Pinion Including Control Valves, Steering Pump, Internal Seals, Bearings and Shafts, Gears, Steering Box and Pump Housings if damaged by the failure of internally lubricated parts.

(12) **BRAKES:** Master Cylinder, Power Assist Booster, Vacuum Assist Booster, Wheel Cylinders, Disc Calipers, Self-Adjusters.

(13) **SEALS & GASKETS:** Seals & Gaskets are covered only if required in conjunction with a Covered Repair. Leaking seals or gaskets are not covered.

### OPTIONAL COVERAGE

• **Enhanced Labor Option:** If YOU have selected the Enhanced Labor Option on YOUR DECLARATION PAGE and paid the additional charge, the ADMINISTRATOR will not determine the average labor rate of repair facilities in the area when adjudicating the claim. The maximum payable repair facility labor rate for a claim approved by the ADMINISTRATOR will be the publicly posted labor rate of YOUR authorized repair facility.

### MANDATORY SURCHARGES

• **Four (4) Wheel/All-Wheel Drive:** If YOUR VEHICLE is equipped with 4 Wheel/All Wheel Drivetrain, this surcharge must be selected on the DECLARATION PAGE. COVERED PARTS: All components in the Differential Assembly and Transfer Case including: Drive Chain, Drive Chain Gears, Planetary Gears, Ring Shift Forks, Bearing, Bushing, Oil Pump Output Shaft, Main Shaft Washers and all other internal lubricated parts, Seals and Gaskets, Differential Housing, Axle Shaft, Ring and Pinion, Bearing, Bushing, Washers, Differential Cover, 4 Wheel Drive Actuator, Locking Hubs and all other internal parts contained with the differential assembly with Seals and Gaskets.

• **Diesel:** If YOUR VEHICLE is equipped with a diesel engine, this surcharge must be selected on the DECLARATION PAGE. COVERED PARTS: By mechanical failure only; fuel injector, fuel pump, pressure regulator and metering valve.

• **Turbo/Supercharger:** If YOUR VEHICLE is equipped with a Turbo/Supercharger, this surcharge

must be selected on the DECLARATION PAGE. COVERED PARTS: By mechanical failure only; Turbocharger/Supercharger Housing, Turbo Boost Valve, Turbo Waste Gate Actuator, Bearing, Bushing, and all other internal parts, Seals and Gaskets. Vehicles with non-manufacturer installed Turbo/Superchargers are not eligible for any coverage.

- **Commercial Use**: If YOUR VEHICLE is used for commercial purposes, or is registered as a company vehicle, which includes but is not limited to transporting customers or employees, delivery service, business travel or is used by more than one driver, the Commercial Use Box must be checked on the DECLARATION PAGE. Vehicles with any of the following components/features ARE NOT eligible for commercial coverage at any time: 4X4 drivetrain, Oversized Tires/ Wheels, Turbo/Supercharger(s), greater than ¾ ton capacity, and greater than 8 passenger capacity. Vehicles at any time equipped with a snow plow, fifth wheel, interior storage racks or power take-off equipment are expressly ineligible for coverage.
- **One (1) Ton Vehicle:** If YOUR VEHICLE has a one ton gross vehicle weight (GVW) capability, this surcharge must be selected on the Registration Page. ONE TON VEHICLES ARE NOT ELIGIBLE FOR COMMERCIAL USE.
- **Hybrid/Electric Vehicle:** If YOUR VEHICLE is a Hybrid or Electric Vehicle, this surcharge must be selected on the DECLARATION PAGE. COVERED PARTS: By mechanical failure only; Electric Motor, Inverter Assembly, Generator, Power Controller, Electric Water Pump, Electric Battery Cooling Fan and Electric Air Conditioning Compressor, Battery Cooling Fan Damper and Relay/Module, Drive Motor Temperature Sensor Switch.

## *VEHICLE BREAKDOWN*
### *Call the ADMINISTRATOR 888-990-7786*

If YOUR VEHICLE has a MECHANICAL BREAKDOWN YOU must follow the following procedures:

(1) Immediately take action to prevent any further damage. This may require YOU to stop YOUR VEHICLE and call for Roadside Assistance to have YOUR VEHICLE towed. This CONTRACT will not cover damage caused by YOUR failure to observe warning lights, vehicle gauges, repair a failed component or take action to prevent further damage.

(2) Take YOUR VEHICLE to a licensed repair facility of YOUR choice.

(3) Instruct the repair facility to call the ADMINISTRATOR to obtain authorization for the claim. Repairs made without prior authorization by the ADMINISTRATOR will not be covered.

(4) Provide US and/or the repair facility with a copy of reasonably required documentation. This may include a copy of this CONTRACT, receipts for car rental and lodging expenses, receipts for maintenance (which include dates of service, vehicle mileage, description of services and amount paid).

- Emergency Repairs: If a BREAKDOWN occurs outside of the ADMINISTRATOR's normal business hours and YOUR VEHICLE can be immediately repaired by a repair facility, the ADMINISTRATOR may waive the pre-authorization requirement under the following circumstances: (i) both the BREAKDOWN and the repair must have occurred within 24 hours of each other and occurred outside of the ADMINISTRATOR'S operating hours; and (ii) all documentation for the repair including dates, description of failure, part numbers and failed components must be available to the ADMINISTRATOR on the first business day following the repair. YOU must contact the ADMINISTRATOR on the first business day following the repair; (365 days in Wisconsin; as soon as reasonably possible in Utah). The repair will only be covered if the failure is for components that are covered by YOUR CONTRACT and would have been approved by the ADMINISTRATOR during normal business hours.

### *CLAIMS PROCEDURES*

- YOU may have YOUR VEHICLE repaired at any licensed repair facility of YOUR choice.
- YOU are responsible for authorizing the diagnosis and tear down of YOUR VEHICLE to the point where mechanical failure can be determined. If the failure is covered by this SERVICE

CONTRACT, the reasonable cost of diagnosis and teardown will be authorized by the ADMINISTRATOR, in its sole discretion, as part of the claim. The amount of any authorization will be determined by nationally published parts and labor guides. NO payments will be approved or made for diagnosis or teardown for failures that are not covered by this SERVICE CONTRACT.

- NO failed components should be discarded or repairs performed until authorization is received from the ADMINISTRATOR. The ADMINISTRATOR reserves the right to inspect failed components at any time.
- The ADMINISTRATOR reserves the right to send an inspector to the repair facility to review and document mechanical failure prior to approving the claim.
- The ADMINISTRATOR will provide the repair facility with an authorization number when the claim is approved and the repair facility is authorized to begin repairs.
- When the work is complete the ADMINISTRATOR will require the repair shop to provide reasonable documentation that the repairs have been completed as authorized. The ADMINISTRATOR will then pay the repair shop directly for the amount approved, or can reimburse YOU. If YOU are seeking reimbursement, YOU will need to provide the ADMINISTRATOR with the reasonable documentation from the repair facility that the repairs were completed as authorized. The documentation must include the parts that were replaced, services performed, date work was performed, mileage at the time of repair and proof that YOU have paid for the repairs in full.
- When YOU pick up YOUR VEHICLE:
- Review the work completed by the repair facility;
- Pay YOUR DEDUCTIBLE listed on the DECLARATION PAGE;
- Pay any charges not covered by this SERVICE CONTRACT;
- Obtain a receipt for the repair and YOUR claim authorization number.
- If YOU are seeking reimbursement for a Rental Vehicle (Must be through a licensed Rental Vehicle Agency) or for Trip Interruption expenses, YOU must provide receipts that coincide with the dates of YOUR authorized repair and meet the terms of YOUR COVERAGE as provided for in this CONTRACT.
- Claims must be submitted to the ADMINISTRATOR within 6 months of a component failure (365 days in Wisconsin) (as soon as reasonably possible in Utah). Claims submitted after this timeframe will not be accepted.

**NOTICE:** OUR obligations under this SERVICE CONTRACT are backed by a service contract reimbursement insurance policy issued by **Wesco Insurance Company.** If any valid claim is not paid within sixty (60) days (thirty (30) days in Arizona and Alaska) after proof of loss has been filed with US, YOU may contact Wesco Insurance Company directly at **59 Maiden Lane, 43rd Floor, New York, NY 10038 or (866) 505-4048.**

## EXCLUSIONS (WHAT IS NOT COVERED BY THIS SERVICE CONTRACT)

(1) **ANY REPAIR OR REPLACEMENT OF ANY VEHICLE COMPONENTS MADE WITHOUT THE PRIOR AUTHORIZATION OF THE ADMINISTRATOR OF THIS SERVICE CONTRACT (Except as noted under Emergency Repairs).**

(2) **Any breakdown caused by a lack of proper lubricants or the necessary amounts of coolants or lubricants.**

(3) **Any breakdown caused by contamination of the VEHICLE'S fuel, fluids or lubricants, or damage caused by fuels containing more than 10% ethanol.**

(4) **Any breakdown caused by a lack of maintenance including but not limited to oil changes, coolant flushes, alignments and other maintenance specified by the Manufacturer of the Vehicle.**

(5) Misuse, abuse, or if YOUR VEHICLE has been used for plowing, snow, racing, competitive driving or towing a trailer in excess of two thousand pounds without a factory installed towing package. Towing a trailer which exceeds the specifications of YOUR VEHICLE or its towing package. Any use of the VEHICLE for purposes other than intended or approved of by the Manufacturer.

(6) Any parts not specifically listed under the COVERAGE that YOU selected.

(7) Any breakdown caused by overheating, regardless of cause.

(8) Any fluids not required for the completion of an authorized repair.

(9) Any breakdown caused by rust or corrosion.

(10) Any breakdown caused by intervening events such as vandalism, fire, collision, theft, riot, or explosion.

(11) Any breakdown caused by weather related damage such as freezing, earthquake, lightning, wind damage, hail, water, or flood.

(12) Failure to protect YOUR VEHICLE from further damage when a breakdown has occurred. (Ex: Continued operation of YOUR VEHICLE when overheating)

(13) Any breakdown that occurs while YOUR VEHICLE's odometer is disconnected or has been tampered with. If YOUR VEHICLE's odometer fails, YOU must promptly repair it. If YOU do not promptly repair a defective odometer this SERVICE CONTRACT is subject to cancellation.

(14) Repair or replacement of components for the purpose of improving operating performance when a failure has not occurred or if YOUR VEHICLE is operating within acceptable tolerances. This includes, but is not limited to, work performed to improve engine compression or reduce oil consumption.

(15) Repairs of bearings, valves or other components that are within the manufacturer's acceptable specification limits. Normal wear and tear will be covered to the extent that normal wear causes the failure of a covered component or component group to operate within the manufacturer's accepted tolerances.

(16) Failures or conditions which existed prior to YOUR purchase of this SERVICE CONTRACT (pre-existing conditions) or which occur during this CONTRACT's validation period.

(17) Any modifications which have been made to YOUR VEHICLE by parties other than the manufacturer, unless performed by the manufacturer's authorized DEALER utilizing manufacturer approved components, included but not limited to any frame or suspension modification; lift kits or oversized/undersized tires or wheels.

(18) Any component, or prior repair, which is covered by or subject to a third party warranty. This includes, but is not limited to, any prior repair that requires subsequent correction or remediation, or that occurs as a result of negligence, poor workmanship, or installation of improper or defective components.

(19) Any repair for which the responsibility is covered by any warranty, guarantee or extended warranty of the manufacturer or a repair facility, regardless of whether the manufacturer or repair facility is in business or operational.

(20) Any repair which is subject to the manufacturer acknowledging a defect or potential defect through a factory service bulletin ("TSB") or a factory recall.

(21) Any liability, costs or damages that YOU may incur to third parties other than those approved by the ADMINISTRATOR for the repair and replacement of covered components.

(22) Any consequential losses YOU incur as a result of the failure of a non-covered component, including damage to an otherwise covered component. There is no coverage at any time for lost business opportunity, time or inconvenience.

(23) Scheduled maintenance (ex: oil changes, coolant flushes, tire rotations, etc...), wear or friction components including but not limited to: belts, brake pads, brake rotors, exhaust systems, catalytic converter, hoses, light bulbs, lubricants, wiper blades, spark plugs and wires, tires, wheel balancing, remote controls, audio speakers and wiring, cassettes, DVD's or discs, oil sludge, and manual clutch components, burnt valves, core charges, wheels/rims.

Shop Supplies and Storage fees.

**(24) INELIGIBLE VEHICLES:** Any commercial vehicle (ex: taxis, buses, government vehicles and construction vehicles). Any Vehicle not listed on the classification chart for this CONTRACT at the time of sale, any vehicle that has been in a flood; vehicles with True Mileage Unknown (TMU); Vehicles that do not have a valid Vehicle Identification Number (VIN); Trucks over 1 ton classification or that have a fifth wheel, vehicles modified from manufacturer's specifications; Vehicles with salvage titles, vehicles purchased by a minor.

## *SUBROGATION*

YOU agree that WE, after honoring a claim on YOUR CONTRACT, have all rights of subrogation against those who may be responsible for YOUR MECHANICAL BREAKDOWN or FAILURE. YOU shall do whatever is necessary to secure such rights. YOU shall do nothing to prejudice such rights, and YOU shall execute and deliver to ADMINISTRATOR instruments and papers required to either secure or maintain such rights. All amounts recovered by YOU for which YOU were previously reimbursed under YOUR CONTRACT shall become OUR property or the property of OUR designee and shall be forwarded to the same by YOU, up to the total amount paid by US under YOUR CONTRACT.

## *ARBITRATION*

### Read the following arbitration provision carefully. It limits certain of YOUR rights, including YOUR right to obtain relief or damages through court action.

Any legal dispute between YOU and ADMINISTRATOR relating to this CONTRACT shall be resolved by binding arbitration. To begin Arbitration, either YOU or WE must make a written demand to the other party for Arbitration. The Arbitration will take place before a single arbitrator. It will be administered in keeping with the Binding Pre-Dispute Arbitration Rules ("Rules") of the Better Business Bureau ("BBB") in effect when the Claim is filed. YOU may get a copy of the BBB's Rules by contacting BBB at (290 Donald Lynch Boulevard Suite 102 Marlborough, MA 01752), calling (508) 652-4800, or visiting www.bbb.org. The filing fees to begin and carry out arbitration will be shared equally between YOU and US. The Federal Arbitration Act, 9 U.S.C. § 1, et seq., will govern and not any state law on arbitration. YOU agree and understand that this arbitration provision means that YOU give up YOUR right to go to court on any Claim covered by this provision. YOU also agree that any arbitration proceeding will only consider YOUR Claims. Claims by, or on behalf of, other individuals will not be arbitrated in any proceeding that is considering YOUR Claims. Please refer to the Special State Disclosures section of this CONTRACT for any added requirements in YOUR state. In the event this Arbitration provision is not approved by the appropriate state regulatory agency, and/or is stricken, severed, or otherwise deemed unenforceable by a court of competent jurisdiction, YOU and WE specifically agree to waive and forever give up the right to a trial by jury. Instead, in the event any litigation arises between YOU and US any such lawsuit will be tried before a judge, and a jury will not be impaneled or struck.

## *TRANSFER OF SERVICE CONTRACT*

This SERVICE CONTRACT may be transferred (only by original CONTRACT purchaser) to another private party upon the sale of the VEHICLE. This CONTRACT may not be transferred to a DEALER or with the VEHICLE as part of a trade-in. The transfer must be made at the time of the VEHICLE transfer. The ADMINISTRATOR must receive written confirmation of the transfer within fifteen (15) days of the transfer of the VEHICLE. A fee of $50.00 must be included with the request to transfer. The request must contain the following: the name, address and telephone number of the new VEHICLE owner and a copy of the Bill of Sale or Title showing transfer. Transfer of SERVICE CONTRACT does not include transfer of the 24-Hour Roadside Assistance Program. CONTRACTS being paid for as part of a payment plan must be paid in full prior to transfer. If the VEHICLE transfer causes any existing Manufacturer's warranty to become voidable then this CONTRACT is not eligible for transfer to the new owner.

If YOU are paying for YOUR SERVICE CONTRACT on a payment or installment plan and YOU fail to make payments in full two (2) or more times during the term of YOUR installment plan, the ADMINISTRATOR may consider YOUR SERVICE CONTRACT terminated and modify the term of YOUR SERVICE CONTRACT to reflect the time and mileage that YOU have accrued and paid for. The ADMINISTRATOR will determine the amount YOU have paid less a $50.00 re-processing fee. The ADMINISTRATOR will apply the result to the original Purchase Date and Purchase Mileage of YOUR SERVICE CONTRACT to determine the revised Expiration Date and Expiration Mileage of YOUR SERVICE CONTRACT. Contact the ADMINISTRATOR at 888-990-7786 to receive the revised Expiration Date and Expiration Mileage of YOUR SERVICE CONTRACT.

## *CANCELLATION OF SERVICE CONTRACT*

### Cancellation by a Lienholder

- In the event that YOUR VEHICLE and this SERVICE CONTRACT are financed, the lienholder on the DECLARATION PAGE may cancel this SERVICE CONTRACT for a default of the loan agreement or if YOUR VEHICLE is repossessed or declared a total loss due to an accident or theft.

### The ADMINISTRATOR reserves the right to cancel if:

- YOUR VEHICLE meets any of the conditions listed under the "EXCLUSIONS" section of this CONTRACT or YOUR VEHICLE does not have a valid Vehicle Identification number (VIN).
- YOUR VEHICLE'S odometer fails during the term of this CONTRACT and YOU do not repair it and have it certified within 30 days of failure.
- The accurate mileage of YOUR VEHICLE cannot be determined at the time of a claim.
- Fraud or material misrepresentation is made at the time of CONTRACT purchase, or during the process of filing a claim.
- YOUR VEHICLE is stolen, totaled or repossessed.
- The ADMINISTRATOR is not paid for the SERVICE CONTRACT, or YOU fail to make timely payments to YOUR payment plan provider.
- YOUR VEHICLE is used in a manner for which it was not intended by the manufacturer, or in a manner that is not covered by the CONTRACT.

If the ADMINISTRATOR cancels this CONTRACT, YOU will receive a pro-rata refund of the CONTRACT charge paid, less any claims that have been paid or approved.

### YOU may cancel this CONTRACT by contacting the VENDOR or ADMINISTRATOR.

- Requests received within 30 days of the CONTRACT purchase date will receive a full refund of the amount YOU paid for the CONTRACT, less any claim payments that have been paid or approved.
- Requests received after the first 30 days are subject to a pro-rated refund. The ADMINISTRATOR will calculate the total days and mileage that the CONTRACT was in force (whichever is greater) as compared to the total term of the CONTRACT. YOU will receive a refund of the unused portion of the CONTRACT less any claims that have been paid or approved and less a $50.00 cancellation fee. The amount of any refund due will be applied to any outstanding balance of the CONTRACT charge.

To initiate a cancellation YOU must contact the VENDOR or ADMINISTRATOR to complete and sign a cancellation form, or mail written notice to the ADMINISTRATOR which includes YOUR: CONTRACT Number, Full Name, Telephone number, reason for cancellation and YOUR signature. A notarized odometer statement or a receipt from a nationally recognized company that includes YOUR Vehicle Identification Number, current mileage of YOUR VEHICLE and the date of VEHICLE service must accompany YOUR request to cancel. The odometer statement or receipt that includes YOUR VEHICLE'S mileage must be dated within 15 days of YOUR request to cancel (except in the case of repossessed, stolen or totaled vehicles. The ADMINISTRATOR may require supporting documentation under these circumstances).

When a Financial Institution or a VENDOR has financed the purchase of this SERVICE CONTRACT, the following will apply:

- If YOU cancel the SERVICE CONTRACT, the refund will be made payable to the lending institution.
- If YOUR VEHICLE is repossessed, totaled or not recovered due to theft, the refund will be made payable to the lienholder.
- Refunds not involving a lienholder will be made payable to the selling VENDOR or YOU based on the procedures of the ADMINISTRATOR.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) Heaton et. al. v. Sunpath, Ltd. et. al.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See local rule 40.1(a)(1)).

[✓]   I.      410, 441, 470, 535, 830*, 835*, 891, 893, 895, R.23, REGARDLESS OF NATURE OF SUIT.

[ ]   II.     110, 130, 140, 160, 190, 196, 230, 240, 290,320,362, 370, 371, 380, 430, 440, 442, 443, 445, 446, 448, 710, 720, 740, 790, 820*, 840*, 850, 870, 871.

[ ]   III.    120, 150, 151, 152, 153, 195, 210, 220, 245, 310, 315, 330, 340, 345, 350, 355, 360, 365, 367, 368, 375, 376, 385, 400, 422, 423, 450, 460, 462, 463, 465, 480, 490, 510, 530, 540, 550, 555, 625, 690, 751, 791, 861-865, 890, 896, 899, 950.

*Also complete AO 120 or AO 121. for patent, trademark or copyright cases.

3. Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

    N/A

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

    YES [ ]      NO [✓]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

    YES [ ]      NO [✓]

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

    YES [ ]      NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

    YES [ ]      NO [✓]

7. Do all of the parties in this action, excluding governmental agencies of the United States and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

    YES [ ]      NO [✓]

    A.   If yes, in which division do all of the non-governmental parties reside?

         Eastern Division [ ]      Central Division [ ]      Western Division [ ]

    B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

         Eastern Division [ ]      Central Division [✓]      Western Division [ ]

8. If filing a Notice of Removal – are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

    YES [ ]      NO [ ]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME Anthony Paronich

ADDRESS 99 High St., Suite 304, Boston, MA 02110

TELEPHONE NO. (508) 221-1510

(CategoryForm6-2017.wpd )